IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

RASHAD O. PAYNE,                     )
                                     )
                    Plaintiff,       )
                                     )
vs.                                  )       Case No. 10-1077-CV-W-ODS
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security.     )
                                     )

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security partially denying his applications for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in July 1984, completed high school, and has prior work experience loading trucks and performing other duties at Home Depot and Wal-Mart stores. He filed applications for disability and supplemental security income benefits, claiming he became disabled on November 16, 2004, due to Crohn's Disease and related complications. The ALJ ruled Plaintiff was not disabled, but the Appeals Council issued a partially favorable ruling after concluding Plaintiff equaled the criteria for the impairment listed in section 5.08 from March 11, 2005, through May 17, 2007. Plaintiff appeals the unfavorable determination for the time periods before and after. The Court's discussion of the factual background will focus on the two time periods at issue.

Plaintiff went to Research Medical Center in November 2004, complaining of nausea, vomiting, discomfort, and bloody diarrhea. A sigmoidoscopy confirmed inflammatory changes in his bowel, and a total colonoscopy revealed what was believed to be "infectious colitis. Crohn's disease less likely." R. at 331. The diagnosis changed

after biopsy and x-ray results confirmed Plaintiff had Crohn's disease.  R. at 340.  He was treated medically by his gastroenterologist, Dr. Gregory Merritt, and arrangements were made for him to be seen at Truman Medical Center in March.  R. at 331.  In January 2005, Plaintiff reported a "sharp left-sided chest pain and gas pains" but "[o]therwise he seems to be fine and is tolerating his diet."  Plaintiff had lost some weight, but there is no indication his weight fell below the level required to meet listing 5.08.  R. at 330.

On March 11, 2005 – the date the Appeals Council determined to be the date Plaintiff met listing 5.08 – Plaintiff suffered a perforation of his small bowel.  As part of the effort to remedy this problem, doctors removed between 100 and 110 centimeters of his colon and created an ileostomy.[1]  Plaintiff's weight at this time was 105 pounds, and the doctors predicted that Plaintiff "may ultimately require home TPN."  R. at 347-48.[2] On April 5, Plaintiff saw Dr. Merritt with complaints of nausea and vomiting, and Dr. Merritt was concerned about the possibility of dehydradtion.  By June, Plaintiff had a PICC line in place.[3]  From August 16 to September 6, Plaintiff was admitted to the hospital for a strep infection and dehydration.  R. at 243-46.  Testing confirmed, however, that Plaintiff's Crohn's disease was inactive and on September 28 the ileostomy was reversed; the surgery was performed by Dr. Dennis Arce.[4]  Plaintiff experienced postoperative complications that kept him hospitalized until November 3,

---

[1]According to a website maintained by the National Institutes of Health, "[a]n ileostomy is an opening in your belly wall that is made during surgery.  Ileostomies are used to deliver waste out of the body when the colon or rectum is not working properly." http://www.nlm.nih.gov/medlineplus/ency/article/007378.htm (last visited May 24, 2011).

[2]TPN stands for total parenteral nutrition, and is a means of delivering nutrients intravenously.

[3]A PICC line is a type of TPN that involves the use of a catheter to administer fluids (medication or nutrients) into a vein above the heart.

[4]While the Record is not clear, it appears Plaintiff's PICC line was removed at this time as well.  There is little doubt that the PICC line was removed before May 2007.

but he was readmitted the next day due to increasing abdominal pain, dehydration, and fluid leakage from his incisions.  R. at 285-88.

In January 2006, returned to Dr. Arce for a scheduled follow-up.  Plaintiff was noted to be "doing well" and making "satisfactory progress" since his latest hospitalization.  He was experiencing three to four "bowel movements that are soft and watery" per day and denied experiencing pain, and his short bowel syndrome was resolving.  R. at 248-50.  In February, Dr. Merritt noted Plaintiff's "weight is up 10 lb, but his stools are loose."  R. at 329.  A CT scan performed in May revealed a "[m]arkedly prominent size and dimension to the small bowel" and, while the cause could not be determined at that time, "[t]he possibility of Crohn's disease should be excluded."  R. at 295.  However, a conclusive determination did not appear to have been made.

Plaintiff saw Dr. Arce in early January 2007.  He reported two to four bowel movements "intermittently soft to more firm."  He also reported irritation and small amounts of bleeding, although Dr. Arce found "no evidence of any bleeding."  A B12 injection was administered, and Plaintiff was told he needed such injections monthly.  He weighed 138 pounds.  R. at 281.  On April 26, Plaintiff went to the emergency room due to rectal bleeding and pain.  On May 18 – the day the Appeals Council determined Plaintiff was no longer disabled – he followed up with Dr. Merritt.  It was noted that he had not been taking medication or receiving his monthly B12 injections because he had lost his Medicaid eligibility.  Dr. Merritt discovered Plaintiff had a mass that required surgical removal and referred him back to Dr. Arce.  Plaintiff's weight at this time was 130 pounds.  R. at 377-78.

Plaintiff did not keep his monthly appointment with Dr. Merritt for July or August.  He also missed the first two appointments for September, but finally kept an appointment for September 28.  Plaintiff's weight was up to 137 pounds, and Dr. Merritt described him as exhibiting "[n]o acute distress" and suffering from "Crohn's disease, well controlled" and "[n]europathy, asymptomatic."  R. at 376.  At his next appointment on November 30, Plaintiff weighed 135 pounds, reported "feeling well" and denied experiencing "any diarrhea, cramping or abdominal pain."  Dr. Merritt described Plaintiff's Crohn's disease as "in remission."  R. at 375.  On February 29, 2008, Plaintiff

weighed 140 pounds.  He had the flu (and related pains and symptoms), but no problems related to Crohn's disease were documented.  R. at 375.

The next office visit of note occurred in July 2008.  Plaintiff reported having diarrhea six to twelve times daily.  He also reported going to the emergency room due to blood in his urine, but had not complied with the doctor's instructions.  Dr. Merritt described the diarrhea as a "possible Crohn's flare" and indicated plans for tests.  R. at 374.  Plaintiff did not keep the appointment for these tests, however, because his bleeding, cramping and pain dissipated.  Nonetheless, Dr. Merritt rescheduled the tests.  R. at 372.  Those tests were performed in early September and showed an "[u]nremarkable upper GI."  R. at 373.  The last appointment with Dr. Merritt reflected in th eRecord occurred in April 2009.  Between September 2008 and April 2009 Plaintiff did not complain of, and Dr. Merritt did not document, any difficulties.  R. at 371.

The hearing was held on June 23, 2009.  At that time, Plaintiff weighed 140 pounds.  R. at 42.  Plaintiff tried working from approximately December 2007 to April 2008.  He worked at a Home Depot outdoors "on the lot," but experienced problems staying hydrated.  R. at 44, 58.  When he leaves his house, he makes sure not to eat anything before going and tries not to stay out longer than three hours.  He testified that on a really bad day he would need to use the restroom twelve to thirteen times.  R. at 59.  He is easily fatigued and cannot play basketball or run.  R. at 60.

Testimony from a vocational expert ("VE") was elicited.  The ALJ asked the VE to assume a person of Plaintiff's age, education and work experience who is capable of no mre than light work, could stand and walk six hours in a day, and would be required to hydrate often.  The VE testified such a person could not perform their past relevant work, but could work as a price marker, inserting machine operator, or a mail clerk.  R. at 63-64.  The ALJ then asked the VE to assume the same person is limited to sedentary work; the VE testified that the jobs previously identified could not be performed, but the individual could work as an administrative support worker, order clerk, or lens inserter.  R. at 64-65.  In response to questions from Plaintiff's counsel, the VE testified that the typical number of days an employee can miss per month is one, and the typical break schedule is one fifteen-minute break in the morning and another in

the afternoon, and a one-hour lunch break.  A person requiring more than this would not be employable.  R. at 66.

As noted earlier, the Appeals Council determined Plaintiff was disabled from March 11, 2005, to May 17, 2007.  The Appeals Council adhered to the ALJ's findings and conclusions for the period from Plaintiff's alleged onset date to March 11, 2005, and for the period after May 17, 2007.  The ALJ found Plaintiff's testimony to be not fully credible because of inconsistencies in the Record, including statements regarding his daily activities and the medical records.  The ALJ found Plaintiff was limited in the manner described in his second hypothetical question and, based on the VE's testimony, found Plaintiff could perform work in the national economy.


## II.  DISCUSSION


"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion."  Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

Plaintiff first argues he was disabled from his onset date until March 11, 2005. He concedes he did not meet the requirements of listing 5.08 until March 11, but contends his residual functional capacity ("RFC") left him incapable of performing work. The problem with Plaintiff's argument is that there is no evidence establishing the extent to which Plaintiff's RFC was limited in this time period.  "The claimant has the burden to

prove his residual functional capacity." <u>Hurd v. Astrue</u>, 621 F.3d 734, 738 (8th Cir. 2010).  While Plaintiff experienced symptoms and underwent treatment, nothing in the Record demonstrates the degree to which he was limited before March 11, 2005.

Plaintiff's remaining arguments focus on the time from May 17, 2007, to the present.  He first argues that his weight left him "extremely close" to the listing requirements, but does not deny that he did not meet the listing.  He also argues that his RFC is more limited than the RFC found by the ALJ, and that the ALJ erred in failing to explain why he discounted Plaintiff's credibility.  To the contrary, the ALJ identified inconsistencies in the Record, including inconsistencies between Plaintiff's testimony and (1) his daily activities, R. at 29, and (2) statements made by him to doctors and opinions of doctors.  R. at 30-33.  The ALJ's credibility determination was proper. <u>See</u> <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted).

There is no question that Plaintiff suffers from the effects of Crohn's disease, and that these effects greatly affect his functional abilities.  However, the ALJ's credibility determination is entitled to deference so long as it is supported by substantial evidence. <u>E.g.</u>, <u>Gates v. Astrue</u>, 627 F.3d 1080, 1082 (8th Cir. 2010).  The differences between Plaintiff's statements to his doctors and his testimony at the hearing are particularly telling, and the Record as a whole contains substantial evidence to support both the ALJ's credibility determinations and the ALJ's assessment of Plaintiff's RFC.

III.  CONCLUSION

For the above-stated reasons, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.


/s/ <u>Ortrie D. Smith</u>
ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 24, 2011                    UNITED STATES DISTRICT COURT